UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL, #228329

       Plaintiff,                    CIVIL ACTION NO. 09-10933

v.                              DISTRICT JUDGE DAVID M. LAWSON

RAJA, JAYNA SHARPLEY,        MAGISTRATE JUDGE MARK A. RANDON
RAWAL, and DEAN JOHNSON,

       Defendants.
_____/

# REPORT AND RECOMMENDATION REGARDING
# DOCKET ENTRY NUMBERS 14 AND 22

Plaintiff, a Michigan prisoner, filed this action under 42 U.S.C. § 1983, alleging that multiple defendants violated his constitutional rights. Presently before the court is the motion to dismiss (Dkt. No. 14) of Defendants Jayna Sharpley and Dean Johnson (collectively referred to as "Defendants"). Defendants contend that Plaintiff's lawsuit against them should be barred because they were not specifically named in Plaintiff's prison grievance. In response, Plaintiff argues that prison staff frustrated his attempts to identify them by name and that, in light of a significant denial of medical treatment, his claims against Defendants should not be dismissed.

For the reasons discussed below, it is recommended that the motion to dismiss be GRANTED as to Defendant Dean Johnson ("Johnson") and DENIED as to Defendant Jayna

Sharpley ("Sharpley"). The undersigned further recommends that Plaintiff's Motion for Immediate Injunctive Action and to Appoint Counsel (Dkt. No. 22) be DENIED at this time.

## DISCUSSION

**A.     Background**

    **1.     Plaintiff's Complaint**

At all times relevant to this case, Plaintiff, Tommy Hall, has been incarcerated at the Parnell Correctional Facility in Jackson, Michigan ("PCF"). Plaintiff's *pro se* complaint alleges that, following back surgery, his requests for follow-up medical care were either ignored or ineffectively treated by prison medical staff. (Dkt. No. 1, p. 5)  In particular, Plaintiff complains that Sharpley, a registered nurse, "did nothing to address the situation or help alleviate the pain", and Johnson, the CMS Coordinator, "denied [him] physical therapy on 10/8/2008", despite a recommendation from his civilian doctor. (*Id.*)  As a result, Plaintiff seeks injunctive relief, and an award of compensatory and punitive damages against all defendants for their denial of adequate medical care. (*Id.*)

    **2.     The MDOC's Grievance Procedure**

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 14, Ex. A).  The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved.  A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

In outlining what should be included in a grievance, the Policy requires, in part, that:

> R. The issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

(Emphasis added).

### 3.   Plaintiff's Grievance

On October 2, 2008, Plaintiff filed Grievance SMT 08-10-1184-12z ("the Grievance") (Dkt. No. 14, Ex. B).  At Step I, the Grievance, in its entirety, read as follows[1]:

> It is clearly stated in grievant's file that grievant's doctor performed back surgery prior to going to prison. I have wrote a kite on several occasions explaining to medical staff the pain that this thin mattress is causing me. I have requested 2 mattresses pursuant to P.D. _____ however the medical staff seems to think they know how I feel better than I do.  Nor has any pain medication been given to me for almost 60 days which causes me to be in consistent pain not being able to sleep due to the pain.  I have not been to a pain doctor since I've been at ___ or ___.  Nor has an MRI been scheduled.  The pain I'm going through is something I was born with.  I had the surgery 4/23/08 at Metro Health Hospital and my doctor states that it takes a full year to obtain the optimum result.  It is quite clear that this

---

[1]Neither Plaintiff nor Defendants have submitted a clear copy of the Grievance. Therefore, a "__" does not indicate that information was left blank in the Grievance but rather that those words were not legible on any copy of the Grievance provided to the Court.

> disregard for authority and insubordination as well as wk rule ___
> "failure to enforce or follow rules, regulations, policies or
> procedures and rule __, conduct unbecoming an employee, making
> the decision to force me to live in pain is clearly a violation of the
> 8th Amendment of the United States Constitution cruel and unusual
> punishment. Relief requested: That grievant receives a special
> accommodation for 2 mattresses, pain medication and that all
> medical personnel involved are punished[2] per policy.

The Grievance did not name Johnson, physically describe him, or raise the subject of a denial of physical therapy.[3] However, although the Grievance also neglected to name or describe Sharpley, a nurse, it did indicate that Plaintiff had explained to "medical staff" that he was in pain and that he had not been given "pain medication. . .for almost 60 days." As relief, the Grievance sought "a special accommodation for 2 mattresses, pain medication, and that all medical personnel involved are punished[4] per policy." Other than the Grievance, no other administrative procedures were initiated regarding the allegations in Plaintiff's Complaint.

    **4.**    **The Prison's Response to the Grievance**

In the prison's response to the Grievance at step I, D. Richardson, a nurse, summarized Plaintiff's complaint as follows: "Grievant contends he is denied treatment for chronic back pain, specifically double mattress and pain medication." (Dkt. No. 14, Ex. B)[5] Nurse Richardson's

---

[2]This *appeared* to be the word "punished" but the undersigned is not certain.

[3]The Grievance also raised the following issues that are not relevant to Defendants' motion: (1) the need for an additional mattress; (2) the fact that the medical staff believed they understood "how he was feeling"better than he did, and (3) the fact that he had not been to a "pain doctor."

[4]*See* note 2.

[5] A clearer copy of this response can be found at Docket No. 10, Exhibit C.

response then briefly outlined Plaintiff's medical history related to his request for pain medication and noted that he is currently taking "Neurontin 600 mg 3 times daily and Salsalate 750 mg 2 times daily for pain control." Significantly, the response was reviewed and signed by Defendant Sharpley on October 10, 2008. The response did not address any issues related to physical therapy and was denied at Step I.

The prison's response at step II was prepared Latrice Hood, Region III Health Care Administrator. It provided a detailed summary of Plaintiff's medical history from August 26, 2008 to November 21, 2008. In the medical history, there were a least six separate references to plaintiff being seen by an "RN." However, the names of these RNs were not included in the history. Again, the step II summary noted that Plaintiff sought only mattress accommodations and pain medications, and that the Grievance was denied as being "resolved." On January 13, 2009, following a review of the step II record by the Quality Assurance Officer, the Grievance was summarily denied at step III.

**B.     Standard of Review**

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source

of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver,* 510 U.S. 266 (1994).

**C.     The Prison Litigation Reform Act**

    **1. The Meaning and Purpose of Proper Exhaustion**

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a).  The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting*, Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002).  Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94.

      a.      **The Failure to Provide a Specific Name(s) Should not Bar a Subsequent Lawsuit Where the Grievance Adequately Informs the Prison of the Complaint and Individuals Involved**

Recently, the Sixth Circuit, in examining a previous version of the Policy at issue here, cautioned courts against being too technical when deciding whether a prisoner's grievance has been properly exhausted. *LaFountain v. Martin*, 2009 WL 1546376 *2 (6th Cir. June 3, 2009) ("It is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.") quoting, *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)). "This relaxed standard is consistent with the general practice of liberally construing pro se prisoners filings." *Id.* And, "[a]n administrative remedy may not be considered 'available' were very technical procedural requirements make compliance difficult for all but the most sophisticated inmate." *Id.* Thus, if the purpose of the exhaustion requirement is to allow prisons to resolve inmate complaints internally, a prisoner should not be strictly held to technical grievance rules where his grievance is sufficient to enable the prison to identify the complaint and the individuals involved. This would be particularly true where, as here, prison officials do not rely on the prisoner's failure to precisely follow the procedural rules by rejecting his grievance on those grounds. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied on by the state courts); *see also Woodford*, 548 U.S. at 92 (applying doctrine of procedural default as it governs habeas corpus petitions).

-7-

This "relaxed standard" has been followed in other cases involving the issue of whether a prisoner's failure to specifically name a defendant bars a § 1983 claim.  For example, in *Grear v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. 2008), the prisoner named "health care staff" in a grievance.  Prison officials did not, however, reject his grievance for failure to identify the specific persons about whom he was complaining. *Id.* at  8.  The court concluded that, because prison officials did not rely on this default by rejecting the grievance, the claim was exhausted as to *all* health care staff, including those named in the lawsuit. *Id.*  In *Schuh v. Dykstra*, 2009 WL 782295, *4 (W.D. Mich. 2009), the court similarly concluded that an individual was sufficiently identified, though unnamed, where the plaintiff's grievance was not rejected for failing to specifically name any individual and the grievance was addressed on the merits. *Id*.; *see also*, *Contor v. Caruso*, 2008 WL 878665, *8 (W.D. Mich. 2008) (Prison officials cannot rely on the procedural rule barring review of a grievance where the grievance was not rejected at any step of the process for failure to identify specific CMS personnel).

    **2.**    **Plaintiff sufficiently exhausted his administrative remedies as to Sharpley**

In this case, both Plaintiff's complaint and his Grievance complain about a lack of pain medication and/or pain management by "medical staff."  The Grievance *was reviewed and signed at step I by Sharpley*.  Additionally, with respect to the alleged denial of medical treatment –including pain medication– the Grievance was denied on the merits.  At no time was the Grievance rejected for failing to include the names of "medical staff."  As such, the undersigned finds that Plaintiff's Step I Grievance was sufficient to put the prison on notice that, *inter alia*, Plaintiff was dissatisfied with the way medical staff was managing his pain.

Furthermore, under the Policy, a prisoner has only 5 to 7 business days to file a Grievance - or risk having it rejected as untimely. (The Policy §§ P. and V.)  The undersigned is not aware of any MDOC procedure that allows a prisoner to discover an individual's name within these time constraints, and Plaintiff contends that "the call outs give no names. . . medical staff. . . do not wear [name badges] or they hide them under their adornment [and] . . . medical staff refuses to provide a name." (Dkt. No. 17, p. 10)  The exhaustion requirement was not designed as a web to ensnare unsophisticated prisoners in procedural technicalities, but rather to prevent inmates from using the federal courts as their *first* forum to resolve grievances.  Accordingly, Plaintiff properly exhausted his administrative remedies as to "medical staff" involved in the alleged denial of pain medication (including Defendant Sharpley), and Sharpley's motion to dismiss should be denied.

**3.        Plaintiff Failed to Exhaust his Administrative Remedies as to Johnson**

The undersigned does find, however, that Plaintiff did not properly exhaust his administrative remedies as to Defendant Johnson.  Plaintiff's complaint alleges that Johnson denied him physical therapy on October 8, 2008.  However, Plaintiff's step I grievance was filed six days earlier, on October 2, 2008.  Obviously, Plaintiff's Step I Grievance could not have included an event that had not yet occurred.  The denial of physical therapy was never mentioned in any response to Plaintiff's Grievance filed by prison officials, so the prison was not afforded an opportunity to address this issue prior to being sued in court.  As such, Plaintiff failed to properly exhaust his administrative remedies as to Defendant Johnson, and he should be dismissed from this lawsuit.

Plaintiff's complaint also alleges that the "CMS pain management clinic" denied his pain medication requests, provided ineffective pain medication, and removed him from medication without reason. Assuming, arguendo, Plaintiff intended that these alleged acts of misconduct be imputed to Defendant Johnson as the CMS Coordinator, his complaint against Defendant Johnson should nevertheless fail because, construing the complaint in the light most favorable to Plaintiff, it does not plead any facts which show that Johnson had a "sufficiently culpable state of mind."[6] *Scott v. Ambani*, No. 08-1671 (6th Cir. Aug. 18, 2009)(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Accordingly, Defendant Johnson's motion to dismiss should be granted.

**D.      Plaintiff's Request for Immediate Injunctive Relief Should be Denied.**

On July 2, 2009, Plaintiff filed a motion for immediate injunctive action against all of the named defendants and "the current contractual medical services provider to the Michigan Department of Corrections." Plaintiff's motion contends that the Department of Corrections has changed contractual medical services providers "due to the [S]tate's fiscal distress" and that this change is "hampering [his] ability to conduct any investigation to present his claims." (Dkt. No. 22, ¶ 13) Plaintiff also claims that this new provider has: a) canceled his off-site consultation with the urologist; b) canceled his Ditropan for pain management on May 25, 2009; and c) informed him that they are discontinuing his Neurontin as of July 5, 2009. *Id*. at ¶¶ 14-16. As a result, Plaintiff asks the court to order the Michigan Department of Corrections and its new contractual

---

[6]Plaintiff has not made this argument.

medical services provider to immediately provide Plaintiff proper medical care, to permanently monitor his health management and appoint him counsel.[7]

### 1.    Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy which would be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002). In deciding whether to grant or deny a preliminary injunction, the Court must balance four factors: (1) whether the plaintiff has shown a strong or substantial likelihood of success on the merits; (2) whether the plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction. *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000). The four factors are not prerequisites to be met, but must be balanced. *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1992).

As to the first factor, at this stage in the litigation, Plaintiff has not shown a strong or substantial likelihood of success on the merits. Plaintiff must show "a close causal connection between the policy and the injuries suffered" and plead facts that support that such a policy or custom exists. *Mullins v. Stratton,* 878 F.Supp. 1016, 1019-20 (E.D. Ken.1995). The courts typically do not intervene in questions of medical judgment. *Youngberg v. Romeo,* 457 U.S. 307, 321 (1982). "Where [as here] a prisoner has received some medical attention and the dispute is

---

[7] The undersigned sees no reason to disturb the prior Order Denying Counsel by Magistrate Judge Whalen. (Dkt. No. 20)

over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Second, Plaintiff's allegations also do not rise to the level of "irreparable injury," as Plaintiff has not presented clear evidence that his condition has worsened or that Defendants have caused irreparable injury at this time. The record is clear that Plaintiff received pain medication in the past and, even if his allegations are correct, the new medical service provider has not completely denied Plaintiff pain medication. Also, the Supreme Court has held that as long as administrators rationally pursue a legitimate prison objective, decisions based upon their informed discretion should be given wide ranging deference. *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119 (1977). Moreover, as neither the third nor fourth factors militate in favor of court intervention, the undersigned suggests that Plaintiff's requested injunctive relief would be inappropriate and should be denied.

## RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the Defendants' Motion to Dismiss (Dkt. No. 14) be DENIED as to Defendant Sharpley but GRANTED as to Defendant Johnson. IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Immediate Injunctive Action (Dkt. No. 22) be DENIED at this time.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon  
Mark A. Randon  
United States Magistrate Judge

Dated:  August 28, 2009

Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 28, 2009, by electronic and/or ordinary mail.

s/Melody R. Miles  
Case Manager to Magistrate Judge Mark A. Randon