UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL,

                    Plaintiff,                            Case Number 09-10933

v.                                              Honorable David M. Lawson
                                                     Magistrate Judge Mark A. Randon

RAJA a/k/a VISHNAMPET THYAGARAJAN,
JANY SHARPLEY, RAWAL, and DEAN
JOHNSON,

                    Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND GRANTING DEFENDANTS' MOTION TO DISMISS

The plaintiff, Tommy Hall, is a Michigan prisoner who brought this civil rights claim under 42 U.S.C. § 1983 against several prison healthcare officials. He alleges that he suffers from a congenital birth defect that causes constant pain. He had two back surgeries before he was imprisoned, and he alleges that the defendants are denying him proper follow-up care including pain medication and physical therapy, which amounts to deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's due process clause. The case was referred to Magistrate Judge Mark A. Randon to conduct all pretrial proceedings. Hall filed a motion for immediate injunctive relief against the defendants and "the current contractual medical services provider to the Michigan Department of Corrections," requesting that the Court order the defendants to provide acceptable medical care, permanently monitor his health management, and appoint counsel for him. The magistrate judge recommended that the Court deny this motion, and the plaintiff has filed objections. Defendants Jany Sharpley and Dean Johnson (the RN Defendants) filed a motion to dismiss arguing that the plaintiff has not

exhausted his administrative remedies. The magistrate judge recommended that the Court deny the motion to dismiss as to Ms. Sharpley and grant the motion as to Mr. Johnson. The defendants objected to that report. The Court finds that the magistrate judge's conclusion is correct. Therefore, the Court will overrule the objections, adopt the report and recommendation, grant defendant Johnson's motion to dismiss, deny defendant Sharpley's motion to dismiss, and deny the plaintiff's motion for immediate injunctive relief.

I.

Plaintiff Tommy Hall is a thirty-six-year-old man who was incarcerated by the Michigan Department of Corrections (MDOC) at its Reception and Guidance Center in Jackson, Michigan before being transferred to the Parnall Correctional Facility (SMT) on September 11, 2008. He alleges that he has a congenital birth defect that results in his spinal cord narrowing and that he has had two surgeries to relieve nerve compression: one in April 2000 while he was previously incarcerated, and the second was a spinal-fusion surgery on April 23, 2008, which was performed by Dr. T. Spencer outside of prison. The plaintiff alleges that he had four screws and four plates inserted during the second back surgery. The plaintiff states that when he returned to prison on August 14, 2008, he repeatedly requested follow-up medical care including pain medication and physical therapy, but these requests continually were denied beginning on August 28, 2008. The plaintiff further alleges that he was prescribed Neurotin and Salicylate (aspirin) for pain, even though that was against protocol; however, the medications were not effective, and his pain worsened. The plaintiff contends that the medications also caused nausea and stomach discomfort because he has acid reflux disease.

The plaintiff filed a grievance under MDOC policy. The magistrate judge set forth both the text of the grievance and the policy in his report, and they need not be repeated here. At the time the grievance was filed, Parnall Corrections Facility's Health Services department employed Jany Sharpley and Dean Johnson in their medical facility. The plaintiff states that he and his wife complained to Ms. Sharpley (a registered nurse), but she did nothing to relieve his pain. The plaintiff alleges that Dr. Raja, his primary caregiver, would not schedule diagnostic testing, a specialist consultation, or treatment, and Dr. Rawal, the Correctional Medical Services (CMS) specialist, believed Mr. Hall's condition was not "serious enough" and refused to examine him until December 12, 2008, which was four months after the plaintiff's first request. In his motion to dismiss, Dr. "Raja" alleges that the plaintiff incorrectly calls Dr. Vishnampet Thyagarajan by the name Dr. "Raja" in his complaint.

According to the plaintiff, Dr. Spencer, the civilian doctor who performed his second surgery, recommended that he receive physical therapy, but Dean Johnson, the CMS Coordinator, denied the plaintiff's physical-therapy request. Johnson is also a registered nurse. The plaintiff alleges that the CMS pain-management clinic denied his request for pain medication, and the medications that were later prescribed were ineffective. The plaintiff also alleges that the clinic's employees removed him from medications without "ample reason" and fabricated statements that suggested that he did not take his medication or show up for appointments. The plaintiff states that his condition has worsened because he has not had treatment, and he now has progressive nerve damage that causes bladder-control problems and a loss of sensation in his penis, which prevents him from obtaining an erection.

The plaintiff's grievance proceeded through all three steps of the Michigan Department of Corrections (MDOC) grievance procedure. The grievance was addressed on the merits, and it was denied at all three stages because the prison officials believed the plaintiff was receiving adequate care – they did not reject the grievance on the basis that the plaintiff used the term "medical staff" without providing the names of all of the CMS personnel involved.

The plaintiff's complaint was filed on March 12, 2009. Dr. Raja moved to dismiss the case on April 16, but the Court denied the motion that same day because the defendant's filing did not comply with the local rule requiring the defendant to seek concurrence. On May 15, 2009, Jany Sharpley and Dean Johnson filed their motion to dismiss. Judge Randon filed his report and recommendation on August 28, 2009.

The magistrate judge recommended that Sharpley's motion to dismiss be denied because the plaintiff's grievance identified her sufficiently by naming the MDOC "medical staff," Sharpley reviewed and responded to the grievance, and the MDOC addressed the merits without objecting to any lack of clarity or identification of defendant Sharpley. Judge Randon reached a different conclusion as to defendant Johnson because Johnson could not have been involved in any conduct discussed in the plaintiff's grievance, since Johnson's denial of the plaintiff's October 8, 2008 request for physical therapy occurred six days after the grievance was filed on October 2, 2008. Judge Randon also noted that the complaint "does not plead any facts which show that Johnson had a 'sufficiently culpable state of mind.'" Rep. & Rec. at 10.

The magistrate judge also recommended that the plaintiff's request for immediate injunctive relief be denied because the plaintiff did not show a strong or substantial likelihood of success on

the merits, and the plaintiff failed to demonstrate irreparable injury as he was not completely denied pain medication.

The plaintiff submitted five objections to the magistrate judge's report and recommendation. The first one simply objects to the injunction being denied, and the second indicates that the plaintiff pleaded facts tending to show that he was being denied medication and consultations with a specialist. In the third objection, the plaintiff alleges that the denial of care constitutes deliberate indifference and cruel and inhuman treatment, which increases the plaintiff's suffering and the defendants' potential damages. The fourth and fifth objections state that the plaintiff was representing himself and could not afford medical records to show irreparable injury, but now he has an attorney who has ordered records. He requests time to provide documentation to support his request for an injunction.

The defendants object to the magistrate judge's denial of Sharpley's request for dismissal, arguing that the magistrate judge incorrectly relied on the fact that Ms. Sharpley reviewed and signed the grievance. The defendants quibble with the district court authority the magistrate judge cited, attempting to factually distinguish the present case. Finally, the defendants argue that even if the term "medical staff" sufficiently notified the prison of who was being grieved, the plaintiff still failed to exhaust his administrative remedies as to Ms. Sharpley. They say that Sharpley would not have had contact with the plaintiff before he was transferred to SMT, where Sharpley was the Health Unit Manager (HUM). The only contact with an RN after the transfer on September 11, 2008 and before the plaintiff filed his grievance on October 2, 2008 was on September 30, 2008. The defendants suggest that there is no proof that the plaintiff came into contact with Sharpley on that occasion.

II.

Objections to a report and recommendation are reviewed *de novo*: "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If a party fails to file objections to the report and recommendation, then he or she waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). The failure to object to the magistrate judge's report also releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

A.

The Prison Litigation Reform Act prohibits the filing of lawsuits alleging a violation of federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. Prior to 2007, the Sixth Circuit required the plaintiff to name each defendant in his or her grievances. *See, e.g.*, *Bell v. Konteh*, 450 F.3d 651, 653-54 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). However, this rule was abrogated by the Supreme Court in *Jones v. Bock*, 549 U.S. at 216-17. *See Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007). Now, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim." *Jones*, 549 U.S. at 218.

The failure to exhaust is an affirmative defense that must be proved by the defendant. *Id.* at 216-17; *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. Mar. 21, 2007) (holding that failure to exhaust "may serve as a basis for dismissal only if raised and proven by the defendants."). If a prisoner presents both exhausted and unexhausted claims, the Court may proceed to consider the exhausted claims. *Jones*, 549 U.S. at 223-24.

The magistrate judge quoted the pertinent provisions of the MDOC's grievance policy in his report. It is true that the policy directs an inmate to name names and succinctly describe offensive conduct. However, the Sixth Circuit has confirmed that since the Supreme Court decided *Jones v. Bock*, courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint. If the information in the grievance is too vague or imprecise, a response so indicating would tell the interested parties that more detail is necessary. However, when the prison officials address the merits of the prisoner's complaint without even mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citation and quotation marks omitted).

The magistrate judge correctly determined that the plaintiff exhausted his remedies as to defendant Sharpley. Although the MDOC's policy requires a grievance to include specific names,

those requirements are relaxed when the purpose of the grievance has been achieved. "This relaxed standard is consistent with the general practice of liberally construing pro se prisoners' filings." *Bell*, 450 F.3d at 654 (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). The defendants insist that there is no suggestion in the record that Ms. Sharpley was involved with the plaintiff at the time of his grievable events, and therefore the grievance itself does not – in the context of the events – actually refer to Sharpley. The problem with that argument is simply this: the complaint specifically says that the plaintiff had gone to Ms. Sharpley to see if she could help alleviate his pain, so the factual predicate for the argument does not stand up. The defendants' second objection – that unpublished circuit precedent relied upon by the magistrate judge can be distinguished – fails as well. As noted above, the Sixth Circuit does not require rigid compliance with the prison's grievance policy if the description in the grievance allows prison officials to identify who is being grieved. *See LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (unpublished). Finally, the defendants argue in their third objection that even if "medical staff" is sufficient, Ms. Sharpley is not part of the "medical staff" because she is the health unit manager (HUM), and the plaintiff was seen by an RN after he transferred to SMT (where Ms. Sharpley works). The defendant points out that the medical summary refers to the HUM after the grievance was filed, but not before. But the medical summary does not provide names of the people who saw the plaintiff. Ms. Sharpley is both an RN and the HUM, and the complaint alleges that the plaintiff spoke to her about his pain; therefore, taking the facts in the light most favorable to the plaintiff and drawing inferences in his favor, a reasonable fact finder could find that Ms. Sharpley was the RN who saw him after he transferred. There were also four other notations on the medical summary between the time that the plaintiff was transferred to SMT and the time he filed his grievance. These

entries all involve medication or re-evaluation of the plaintiff's pain. They are very brief and do not indicate who was present, so Ms. Sharpley could have had contact with the plaintiff in her capacity as an RN or HUM when the events in these medical summary notes occurred.

The Court also agrees with the magistrate judge that the plaintiff's grievance is not sufficient to exhaust his claims against defendant Johnson. The complaint alleges that Mr. Johnson denied the plaintiff physical therapy on October 8, 2008, which is six days after the plaintiff filed his grievance on October 2. Since the grievance cannot include an event that had not yet occurred, the term "medical staff" could not be read to include Mr. Johnson without a later amendment.

B.

The Court also agrees with the magistrate judge's disposition of the plaintiff's motion for a preliminary injunction. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The magistrate judge cited the appropriate four factors, concluding that none of them favors the plaintiff.

The plaintiff has not demonstrated a likelihood of success on the merits. His claim is brought under 42 U.S.C. § 1983, which requires him to prove "(1) that there was a deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). To prove an Eighth Amendment claim alleging deliberate indifference to a prisoner's medical needs, the plaintiff must show a serious medical need and "that an official who actually knew of the serious medical need possessed 'a sufficiently

culpable state of mind in denying medical care.'" *Perez v. Oakland County*, 466 F.3d 416, 424 (6th

Cir. 2006) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005)). The Supreme

Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical
> condition does not state a valid claim of medical mistreatment under the Eighth
> Amendment . . . . In order to state a cognizable claim, a prisoner must allege acts or
> omissions sufficiently harmful to evidence deliberate indifference to serious medical
> needs.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Applying this standard, the Court held that "whether

. . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a

matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not

represent cruel and unusual punishment." *Id.* at 107. "Where a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant

to second guess medical judgments and to constitutionalize claims which sound in state tort law."

*Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Dr. Raja's refusal to refer the plaintiff for diagnostic testing likely is insufficient to establish

deliberate indifference; instead, it is a matter of medical judgment that does not constitute cruel and

unusual punishment. *See Estelle*, 429 U.S. at 107. The complaint alleges that the plaintiff

immediately requested "follow-up medical care, including physical therapy" when he returned to

prison on August 14, 2008, and that the civilian doctor who performed the plaintiff's surgery

recommended physical therapy. A prison official's disregard of a civilian physician's

recommendation may create a question of fact as to deliberate indifference. *Cf. Scicluna v. Wells*,

345 F.3d 441, 445 (6th Cir. 2003). But the plaintiff has provided no evidence to show that RN

Johnson is the person who disregarded Dr. Spencer's recommendation. Furthermore, Johnson could

not have seen the plaintiff immediately after he returned to prison on August 14, 2008 because, at that time, the plaintiff had not yet been transferred to SMT. Since the plaintiff was given some medications, the issue becomes one of the adequacy of treatment, and the Court may "be reluctant to second guess medical judgments." *Westlake*, 537 F.2d at 860 n.5.

This first factor weighs against issuing a preliminary injunction because the plaintiff does not present a strong likelihood of success on the merits.

Nor has the plaintiff established that he "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). In *Abney*, the Sixth Circuit held that because "there is no guarantee that the plaintiffs' condition will improve or at least deteriorate at [a] slower rate" with an injunction, the plaintiffs failed to establish irreparable harm. *Ibid.* The plaintiff complains about the lack of pain medication, physical therapy, and consultations with other physicians, but it is unclear how the deprivation of these services is causing him irreparable injury. Nerve damage may be an irreparable injury, but whether receiving increased or different pain medication, physical therapy, or multiple medical opinions would prevent this harm is unsubstantiated.

The plaintiff has not established that the failure to issue the injunction will cause harm to others. "[N]o substantial harm can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (internal quotations omitted). Whether or not the defendants acted constitutionally, they are unlikely to experience "substantial harm," if the arguably unnecessary consultations, diagnostic tests, or pain medications are ordered. At most, it would be inconvenient and more expensive to treat the plaintiff.

An injunction likely would not serve the public interest. The Supreme Court has noted:

It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen. For state prisoners, eating, sleeping, dressing, washing, working, and playing are all done under the watchful eye of the State, and so the possibilities for litigation under the Fourteenth Amendment are boundless. What for a private citizen would be a dispute with his landlord, with his employer, with his tailor, with his neighbor, or with his banker becomes, for the prisoner, a dispute with the State. Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems.

*Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973).

Preliminary injunctive relief is not called for here.

C.

The plaintiff also has moved for the appointment of counsel. It does not appear that the magistrate judge addressed this motion. There is no right to counsel in prisoner civil rights cases. *Glover v. Johnson*, 75 F.3d 264, 268-69 (6th Cir. 1996). "'[A]ppointment of counsel in a civil case is . . . a matter within the discretion of the court. It is a privilege and not a right.'" *Childs v. Pellegrin,* 822 F.2d 1382, 1384 (6th Cir. 1987) (quoting *United States v. Madden,* 352 F.2d 792, 793 (9th Cir. 1965)); *see also Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994) ("In exercising its discretion, the district court should consider the legal complexity of the case, the factual complexity of the case, and the [plaintiff's] ability to investigate and present his claims, along with any other relevant factors."). The appointment of counsel in a civil proceeding is warranted only by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-07 (6th Cir. 1993). In this case, there are no exceptional circumstances that have been brought to the attention of the Court, and the interests of justice do not require appointment of counsel at this time. If, however, the Court

determines that counsel should be appointed for the plaintiff in the future, the Court may revisit the plaintiff's request.

<center>III.</center>

The plaintiff has not exhausted his administrative remedies as to defendant Dean Johnson, but has done so for defendant Jany Sharpley.  The plaintiff has not established a right to injunctive relief at this stage of the proceedings.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #33] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's and defendants' objections to the report and recommendation [dkt #34, 36] are **OVERRULED**.

It is further **ORDERED** that the defendants' motion to dismiss [dkt #14] is **GRANTED IN PART AND DENIED IN PART**.  The complaint is **DISMISSED without prejudice** as to defendant Dean Johnson, **only**.

It is further **ORDERED** that the plaintiff's motion for a preliminary injunction and for appointment of counsel [dkt #22] is **DENIED**.

<div style="margin-left:45%;">
s/David M. Lawson
DAVID M. LAWSON
United States District Judge
</div>

Dated:  March 30, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO