UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL, #228329

        Plaintiff,                        CIVIL ACTION NO. 09-10933

     v.                                 DISTRICT JUDGE DAVID M. LAWSON

RAJA, JAYNA SHARPLEY,            MAGISTRATE JUDGE MARK A. RANDON
RAWAL, and DEAN JOHNSON,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT VISHNAMPET THYAGARAJAN'S SECOND MOTION
TO DISMISS (DKT. NO. 38) ON THE EXHAUSTION ISSUE**

**I. INTRODUCTION**

Plaintiff, a Michigan prisoner, filed this action under 42 U.S.C. § 1983, alleging that several prison healthcare officials violated his constitutional rights by failing to provide him medical care following back surgery. Presently before the court is the second motion to dismiss of Defendant Vishnampet Thyagarajan, M.D. (apparently misidentified by Plaintiff in his complaint as "Dr. Raja"). (Dkt. No. 38)[1] Dr. Thyagarajan contends that Plaintiff's claims against him should be dismissed for two reasons: (1) Plaintiff's prison grievance was not administratively exhausted, as it did not specifically name or state any allegations against Dr.

---

[1] Dr. Thyagarajan's (spelled Thyagarajian in Plaintiff's medical records) first motion to dismiss was denied for failure to seek concurrence. (Dkt. No. 11)

-1-

Thyagarajan; and (2) Plaintiff's *pro se* complaint[2] fails to state a claim against him upon which relief could be granted, and allowing Plaintiff to amend would be futile because of his failure to exhaust. In response, Plaintiff argues that his grievance provided sufficient notice to prison officials of Dr. Thyagarajan's involvement in Plaintiff's alleged improper medical care. Plaintiff's brief in response to the motion also seeks leave to amend his complaint.

Although Dr. Thyagarajan was not identified by name in Plaintiff's grievance, prison officials responded to Plaintiff's grievance on the merits, without noting this procedural deficiency, and the grievance was otherwise sufficient to identify the involvement of Dr. Thyagarajan. For these reasons, it is RECOMMENDED that Defendant Thyagarajan's second motion to dismiss be DENIED on the issue of exhaustion. As to Dr. Thyagarajan's second argument, the undersigned agrees that Plaintiff's complaint, as written, fails to state a claim against Dr. Thyagarajan. However, since the complaint was drafted by a prisoner, lacking in legal training, by separate order, Plaintiff's counsel will be afforded an opportunity to move for leave to amend the complaint (after seeking concurrence) limited to the following four issues raised in Plaintiff's prison grievance: (1) denial of a second mattress;[3] (2) failure to receive pain medication; (3) failure to schedule an MRI; and (4) failure to be seen by a "pain doctor." If Plaintiff fails to move for leave to amend within twenty-one (21) days, Dr. Thyagarajan should be dismissed as a party to this lawsuit.

---

[2] At the time Plaintiff filed his complaint, in March of 2009, he was not represented by counsel. However, Attorney Shirley Burgoyne filed an appearance on behalf of Plaintiff on September 14, 2009. (Dkt. No. 35)

[3] There appears to be no involvement of Dr. Thyagarajan in the alleged denial of a second mattress to Plaintiff.

## II. FACTS

**A.     Background**

   **1.     Plaintiff's Complaint[4]**

At all times relevant to this case, Plaintiff, Tommy Hall, has been incarcerated at the Parnell Correctional Facility in Jackson, Michigan ("SMT").  Plaintiff's *pro se* complaint alleges that he has a congenital birth defect that results in his spinal cord narrowing and underwent two surgeries to relieve nerve compression: one in April 2000 while he was previously incarcerated, and a spinal-fusion surgery on April 23, 2008, which was performed by Dr. T. Spencer, outside of prison.  Plaintiff alleges that he had four screws and four plates inserted during his second back surgery.  Plaintiff states that, when he returned to prison on August 14, 2008, he repeatedly requested follow-up medical care (including pain medication and physical therapy), but these requests continually were denied beginning on August 28, 2008.  In particular, Plaintiff complains that Dr. Thyagarajan, his primary care-giver, "refused to take Plaintiff's complaints seriously," and refused to schedule treatment or refer Plaintiff for diagnostic testing or consults with specialists, "which constituted an undue infliction and extension of pain."  (Dkt. No. 1)  Plaintiff further alleges generally that the alleged refusal of all Defendants' to treat Plaintiff's medical condition exacerbated his medical condition causing progressive nerve damage, which resulted in bladder control problems and a loss of sensation in his penis, which made him incapable of obtaining an erection.  As a result, Plaintiff seeks

---

[4] Section A(1) of the facts is taken primarily from the district court's opinion of March 30, 2010. (Dkt. No. 44)

injunctive relief, and an award of compensatory and punitive damages against all Defendants for their denial of adequate medical care. (*Id.*)

    2.    **The MDOC's Grievance Procedure**

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 14, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

In outlining what should be included in a grievance, the Policy requires, in part, that:

> R.    The issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

(Emphasis added).

**3.**    **Plaintiff's Appointment with Dr. Thyagarajan Prior to Filing the Grievance**

Plaintiff was transferred to the SMT from another facility on September 11, 2008. (Dkt. No. 42, p. 8) Plaintiff's first medical appointment with Dr. Thyagarajan was on September 19, 2008. (Dkt. No. 42, p. 9) According to the medical note prepared by Dr. Thyagarajan, during his appointment, Plaintiff was "angry[,] threatening grievance, [and] demanding stronger pain meds."

Dr. Thyagarajan placed Plaintiff on "ultram, neurontin until PMC [Pain Management Committee] takes over the management [of his pain]." The Ultram medication was subsequently denied by Dr. Pandya, the Regional Medical Officer ("RMO"). (Dkt. No. 42, p. 10). According to the medical records, it appears that Dr. Thyagarajan was the only Medical Provider ("MP") that met with Plaintiff prior to the filing of his grievance. (Dkt. No. 42, Ex. B)

4.  **Plaintiff's Grievance**

On October 2, 2008, Plaintiff filed Grievance SMT 08-10-1184-12z ("the Grievance") (Dkt. No. 14, Ex. B). At Step I, the Grievance, in its entirety, read as follows:

> It is clearly stated in grievant's file that grievant's doctor performed back surgery prior to going to prison. I have wrote a kite on several occasions explaining to *medical staff* the pain that this thin mattress is causing me. I have requested 2 mattresses pursuant to P.D. 04.06.160 (e) however the *medical staff* seems to think they know how I feel better than I do. *Nor has any pain medication been given to me for almost 60 days which causes me to be in consistent pain* not being able to sleep due to the pain. *I have not been to a pain doctor since I've been at RG&C or SMT. Nor has an MRI been scheduled.* The pain I'm going through is something I was born with. I had the surgery 4/23/08 at Metro Health Hospital and my doctor states that it takes a full year to obtain the optimum result. It is quite clear that this disregard for authority and insubordination as well as wk rule #13 "Failure to enforce or follow rules, regulations, policies or procedures and rule #5 conduct unbecoming an employee." Making the decision to force me to live in pain is clearly a violation of the 8th Amendment of the United States Constitution "cruel and unusual punishment."
> Relief requested: That grievant receives a special accommodation for 2 mattresses, pain medication and that all *medical personnel* involved are punished per policy.

(Emphasis added).

The Grievance did not name Dr. Thyagarajan or physically describe him. However, it did indicate that Plaintiff had explained to "medical staff" that he was in pain and that he had not been

-5-

given "pain medication . . . for almost 60 days;" that an MRI had not been scheduled; and that he had not been seen by a pain doctor. As relief, the Grievance sought "a special accommodation for 2 mattresses, pain medication, and that all medical personnel involved are punished per policy." Other than the Grievance, no other administrative procedures were initiated regarding the allegations in Plaintiff's Complaint.

### 5. The Prison's Response to the Grievance

In the prison's response to the Grievance at step I, D. Richardson, a nurse, summarized Plaintiff's complaint as follows: "Grievant contends he is denied treatment for chronic back pain, specifically double mattress and pain medication." (Dkt. No. 42, Ex. A) Nurse Richardson's response noted that "MP requested Regional Medical Officer approval for short time pain medication until Pain Management Committee could review case" and that Plaintiff was being "treated, evaluated, diagnostic testing conducted and monitored by the MP, who is responsible for determining the most appropriate course of treatment." Last, Nurse Richardson implicitly acknowledged that, through his grievance, Plaintiff was expressing a complaint against his MP: "Disagreement with the medical judgment of the MP doesn't support a claim that the treatment plan is inappropriate." At no time did prison officials advise Plaintiff of his failure to specifically name the "medical staff" against whom he grieved.

Plaintiff submitted an appeal at Step II. In it he stated that the prison's contention, in its Step I response, that he was "being treated, evaluated, monitored, and afforded diagnostic testing by the MP" was "simply not true." The prison's response at step II was prepared by Latrice Hood, Region III Health Care Administrator. It provided a detailed summary of Plaintiff's medical history from August 26, 2008 to November 21, 2008. In the medical summary, there were three

separate entries dated before Plaintiff's grievance (9/19/08, 9/24/08 and 9/25/08) referencing actions by the MP (Dr. Thyagarajan). However, the name "Dr. Thyagarajan" was not included in the summary – nor for that matter was the name of any "medical staff" disclosed anywhere in the prisons' responses to the Grievance, except by reference to the acronyms: "RN," "RMO," "MP," "PA" and "RMO," etc.[5] The step II summary noted that Plaintiff sought mattress accommodations and pain medications, and that the Grievance was denied as being "resolved." On January 13, 2009, following a review of the step II record by the Quality Assurance Office, the Grievance was summarily denied at step III.

### III. ANALYSIS

**A.     Standard of Review**

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266 (1994).

---

[5] The single exception was the mention of Dr. Rawal, by name, in the last two lines of the summary.

B.  **The Prison Litigation Reform Act**

1. **The Meaning and Purpose of Proper Exhaustion**

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting *Porter v. Nussle,* 534 U.S. 516, 525 (2002). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94.

2.  **Plaintiff sufficiently exhausted his administrative remedies as to Dr. Thyagarajan**

Consideration of Dr. Thyagarajan's second motion to dismiss follows the District Judge's Order adopting the undersigned's report and recommendation finding that the Grievance was

sufficient to allow his complaint to proceed against co-Defendant Jayna Sharpley, even though she was not specifically named therein. (Dkt. No. 44) In particular, the Court reasoned that:

> the Sixth Circuit has confirmed that since the Supreme Court decided *Jones v. Bock*, courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).
>
> A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint. If the information in the grievance is too vague or imprecise, a response so indicating would tell the interested parties that more detail is necessary. However, when the prison officials address the merits of the prisoner's complaint without even mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citation and quotation marks omitted). (Dkt. No. 44, p. 7)

The Court's reasoning is equally applicable to Dr. Thyagarajan. Although Plaintiff did not specifically name Dr. Thyagarajan, the Grievance was sufficient to put prison officials on notice of the involvement of Dr. Thyagarajan in Plaintiff's allegations of mistreatment by "medical staff." It appears that Dr. Thyagarajan was the only MP to see Plaintiff at SMT prior to the filing of the Grievance. And, in its response to the Grievance at Step I, the prison not only noted the involvement of the MP (Dr. Thyagarajan) in Plaintiff's treatment – but acknowledged that Plaintiff disagreed with the MP's treatment decisions.

Further, in response to the Grievance, the prison failed to even mention Plaintiff's "procedural default" of failing to specifically name the "medical staff" against whom he grieved.

Instead, they correctly deduced that the Grievance involved Dr. Thyagarajan and responded accordingly. As the Sixth Circuit recently recognized, a prison may properly preserve its right to subsequently seek dismissal of a prisoner's federal lawsuit for failure to exhaust, where it both denies the grievance on the merits *and* denies it for failure to comply with "critical grievance procedures."

> Where the [prisoner's] grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust under *Woodford*. *See Grear v. Gelabert*, No. 07-cv-203, 2008 WL 474098, at *2, n. 1 (W.D. Mich. Feb. 15, 2008) ("A state is, of course, always free to reject a grievance both for failure to properly comply with available procedures and on the merits.... As long as the 'procedural default' rejection is clear, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.").

*Vandiver v. Correctional Medical Services, Inc.*, 326 Fed.Appx 885 (6th Cir. May 1, 2009). Here, prison officials failed to even mention Plaintiff's failure to comply with the Policy.

Dr. Thyagarajan also contends that the Grievance did not state any allegations against him, and that it did not address Plaintiff's subsequent complaint allegations (i.e., that Dr. Thyagarajan "did not refer Plaintiff for diagnostic tests or consultations with specialists."). (Dkt. No. 38, p. 7) These arguments are not well taken. The Grievance clearly states that "*I have not been to a pain doctor since I've been at RG&C or SMT. Nor has an MRI been scheduled.*" Given the liberal construction afforded prisoner filings, this can be interpreted to claim, without "active interpretation," a of lack of access to a specialist (pain doctor) and a lack of diagnostic testing (an MRI). *See, Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The appropriate liberal construction [afforded prisoner pleadings] requires active interpretation in some cases. . ."). As

Plaintiff's MP, it is likely that Dr. Thyagarajan would be involved in making these referrals. As such, Plaintiff properly exhausted his administrative remedies as to Dr. Thyagarajan.

Since the undersigned finds that Plaintiff properly exhausted his administrative remedies as to Dr. Thyagarajan, Dr. Thyagarajan's primary objection to denying Plaintiff to leave amend his complaint – as being futile – also fails. This issue will be addressed in a separate order permitting Plaintiff, a prisoner now represented by counsel, to seek leave to amend his Complaint within twenty-one (21) days; however, any amendment shall be limited to the following four areas addressed in the Grievance: (1) denial of a second mattress; (2) failure to receive pain medication; (3) failure to schedule an MRI; and (4) failure to be seen by a "pain doctor." If Plaintiff fails to file an amended complaint, then Dr. Thyagarajan should be dismissed from this suit.

## IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendant Vishnampet Thyagarajan, M.D.'s second motion to dismiss (Dkt. No. 38) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: April 26, 2010

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served electronically on the parties of record on this date, April 26, 2010.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
