UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL,

              Plaintiff,                CIVIL ACTION NO. 09-10933

        v.                     DISTRICT JUDGE DAVID M. LAWSON

RAJA, ET. AL.,                 MAGISTRATE JUDGE MARK A. RANDON

              Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT CMS'S MOTION
FOR SUMMARY JUDGMENT AND/OR TO DISMISS (DKT. NO. 87)**

      This matter is before the undersigned Magistrate Judge pursuant to an order of reference filed on July 22, 2009 (Dkt. No. 24).  Plaintiff Tommy Hall, a Michigan parolee, has sued several defendants alleging they were deliberately indifferent to his serious medical needs while he was an inmate with the Michigan Department of Corrections ("MDOC").  On March 8, 2011, Defendant Correctional Medical Services, Inc. ("CMS"), the former medical provider for the MDOC, filed the instant motion for summary judgment and/or to dismiss under 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6) (Dkt. No. 87).  CMS contends that Plaintiff failed to properly exhaust his administrative remedies with respect to his claims against CMS, and that his Complaint fails to state a claim of deliberate indifference.  Plaintiff filed a timely response to the motion (Dkt. No. 89).  The undersigned finds that a determination on the motion can be made without a hearing.  See E.D. Mich LR 7.1(f)(2).

For the reasons set forth below, the undersigned finds that Plaintiff sufficiently exhausted his administrative remedies as to CMS and has stated a plausible claim of deliberate indifference against CMS in Count Two of his Second Amended Complaint.  Therefore, **IT IS RECOMMENDED** that CMS's motion to dismiss be **DENIED** with respect to Count Two – but **GRANTED** with respect to Count Three – which impermissibly seeks to hold CMS liable under the doctrine of vicarious liability.

## I. BACKGROUND

Plaintiff, a former Michigan prisoner, brought this civil rights claim under 42 U.S.C. § 1983 against several prison healthcare officials and two corporate medical service providers.  Plaintiff was incarcerated by the MDOC at its Reception and Guidance Center in Jackson, Michigan before being transferred to the Parnall Correctional Facility on September 11, 2008.  Plaintiff alleges he has a congenital birth defect that results in his spinal cord narrowing.  Two surgeries have been performed to relieve Plaintiff's nerve compression: one in April 2000, while he was previously incarcerated, and the second, a spinal-fusion surgery, on April 23, 2008, which was performed outside of prison (Dkt. No. 64 (Pl.'s Second Am. Compl.), ¶¶ 11-13).  Plaintiff states that, when he returned to prison on August 14, 2008, he was removed from all medications (MS Contin, Norco, Neurontin, Vicodin, Nexium, Atenolol, Baclafin and Tenoretic) and that he sought follow-up medical care including pain medication and physical therapy, but his requests were repeatedly denied (Dkt. No. 64, ¶¶ 14, 16).  Defendant CMS was the medical provider for prisons in the State of Michigan until April 1, 2009, after which co-defendant Prison Health Services ("PHS") became the medical provider (Dkt. No. 64, ¶ 9).

-2-

While incarcerated, Plaintiff claims his pain condition was bad enough to warrant three emergency trips to Allegiance Hospital where he was given Morphine and Dilaudid for pain (Dkt. No. 64, ¶ 17).   Plaintiff alleges that, after returning to prison, these pain medications were discontinued.  Beginning in December, 2008, or January, 2009, Plaintiff was given Ultram for his pain (Dkt. No. 64, ¶ 20).  Plaintiff alleges that Ultram is the strongest medication that CMS or PHS will prescribe for his pain (*Id.*).

## A.  The MDOC's Grievance Procedure

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.   The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 14, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

In outlining what should be included in a grievance, the Policy requires, in part, that:

> R.  The issues should be stated briefly and concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

(Emphasis added).

-3-

**B. Plaintiff's Grievance**

On October 2, 2008 – at which time CMS was the MDOC's medical provider – Plaintiff filed

Grievance SMT 08-10-1184-12z ("the Grievance") (Dkt. No. 14, Ex. B).  At Step I, the Grievance,

in its entirety, read as follows:

> It is clearly stated in grievant's file that grievant's doctor performed
> back surgery prior to going to prison. I have wrote a kite on several
> occasions explaining to *medical staff* the pain that this thin mattress
> is causing me. I have requested 2 mattresses pursuant to P.D.
> 04.06.160 (e) however the *medical staff* seems to think they know
> how I feel better than I do. *Nor has any pain medication been given
> to me for almost 60 days which causes me to be in consistent pain* not
> being able to sleep due to the pain. *I have not been to a pain doctor
> since I've been at RG&C or SMT. Nor has an MRI been scheduled.*
> The pain I'm going through is something I was born with. I had the
> surgery 4/23/08 at Metro Health Hospital and my doctor states that it
> takes a full year to obtain the optimum result. It is quite clear that this
> disregard for authority and insubordination as well as wk rule #13
> "Failure to enforce or follow rules, regulations, policies or procedures
> and rule #5 conduct unbecoming an employee." Making the decision
> to force me to live in pain is clearly a violation of the 8th Amendment
> of the United States Constitution "cruel and unusual punishment."
> Relief requested: That grievant receives a special accommodation for
> 2 mattresses, pain medication and that all *medical personnel* involved
> are punished per policy.

(Emphasis added).  It is undisputed that the prison responded to the Grievance on the merits without

requiring Plaintiff to further specify the name(s) of individuals or entities involved.

**C. Plaintiff's Claims Against CMS**

Plaintiff's Second Amended Complaint sets forth two separate counts against CMS.  In

Count Two, Plaintiff alleges that his constitutional rights were violated through various policies,

practices, or procedures that were admittedly implemented by either the MDOC or the Medical

Service Advisory Committee ("MSAC") but which CMS "adopted formally or by practice and

-4-

custom" (Dkt. No. 64, ¶ 42).  Count Two also alleges that "employees of CMS including the pain management committee members are the people responsible for the cruel and inhuman treatment [of Plaintiff] and deliberate indifference. . .and that CMS is responsible for their actions due to the alleged policies, practices, and customs" (Dkt. No. 64, ¶ 45).  In Count Three, Plaintiff sets forth various allegations of alleged wrongdoing against co-defendant, Dr. Thyagarajan, for which he seeks to hold CMS liable. (Dkt. No. 64, ¶¶ 52-60).

## II.  ANALYSIS

### A.  Standard of Review

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Under Fed. R. of Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions.  *See Iqbal*.  Therefore,

-5-

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## B. Plaintiff Exhausted his Administrative Remedies as to CMS

### 1. The Meaning and Purpose of Proper Exhaustion

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94.

Although the MDOC's policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been achieved (i.e., where the

prisoner's grievance gives prison officials "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."). *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted)). "This relaxed standard is consistent with the general practice of liberally construing *pro se* prisoners' filings." *Bell*, 450 F.3d at 654 (quoting *Spencer*, 449 F.3d at 725). As Judge Lawson has previously noted:

> The Sixth Circuit has been quite explicit on this point. *See Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010). In Reed-Bey, the defendants challenged on exhaustion grounds the complaint of a prisoner who "pursued his grievance through all three levels of prison review, yet he failed to identify the 'names of all those involved' in the grievance, as the prison's grievance procedures require." *Id.* at 323. The court held that "[b]ecause the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than invoke its procedural bar, Reed-Bey exhausted his claim. " *Ibid.*

(Dkt. No. 56).

Here, the Grievance clearly states that "I have not been to a pain doctor since I've been at RG&C or SMT. Nor has an MRI been scheduled." Given the liberal construction afforded prisoner filings, this can be interpreted to claim, without "active interpretation," a lack of access to a specialist (pain doctor) and a lack of diagnostic testing (an MRI). Given that CMS was the medical provider for the MDOC at the time Plaintiff filed the grievance and the "medical staff" referenced were, or could reasonably be construed as, CMS employees, fair notice of the claim was provided to prison officials and Plaintiff should be deemed to have properly exhausted his administrative remedies as to CMS. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The appropriate liberal construction [afforded prisoner pleadings] requires active interpretation in some cases. . .").

Moreover, Judge Lawson has previously held, with respect to Co-Defendant Dr. Thyagarajan (an employee of CMS), that the prison's response to the merits of the Grievance "satisfied the need for specificity expressed in the MDOC's grievance procedure, and the grievance filed by the plaintiff satisfied the exhaustion requirement" (Dkt. No. 56, p. 6). This reasoning is equally applicable here, and CMS's motion to dismiss for failure to exhaust should be denied.

**C.  Plaintiff Stated a Claim Against CMS in Count Two but not in Count Three**.

CMS next argues that Plaintiff has failed to state a claim upon which relief can be granted. Specifically, CMS contends that Plaintiff has not stated a plausible claim of deliberate indifference, because Plaintiff has not alleged that *CMS* had a policy, practice, or custom that was allegedly unconstitutional.

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  Under *Monell*, in order to establish a § 1983 claim against a corporation, Plaintiff must allege that he suffered deliberate indifference due to a policy, practice, or custom of CMS.  *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (extending the holding in *Monell* to private corporations). A claim relying on the doctrine of respondeat superior will not lie.  *See Monell*, 436 US 658, at 691. In order to satisfy the requirements set forth in *Monell*, Plaintiff must "identify the policy, connect the policy to the [corporation] itself and show that the particular injury was incurred because of the execution of that policy."  *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

-8-

In the instant case, Plaintiff had the right to receive adequate medical care while incarcerated and under the care of Defendant CMS.  *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Those responsible for Plaintiff's medical care had the duty to prevent "undue suffering or the threat of tangible residual injury." *Id.*  The Second Amended Complaint alleges that Plaintiff suffered due to the actions of CMS not providing adequate pain medications, and preventing Plaintiff from seeking medical advice from his surgeon (Dkt No. 64, ¶ 46, 48).  It further alleges that the deprivation of Plaintiff's rights were a direct result of the policies, practices and customs that have been adopted by CMS *(id.)*.  CMS argues that all of the policies complained about by Plaintiff are not policies of CMS, but rather policies of the MDOC. However, CMS does not cite any case law holding that MDOC health care policies may not be imputed to CMS and, at this stage of the litigation, it is unclear whether CMS can be held accountable for following what it claims to be MDOC's policies and procedures.  Furthermore, at this point in the proceedings, all of Plaintiff's factual allegations must be accepted as true. Plaintiff's Amended Complaint (Dkt. No. 64) alleges the following against CMS:

> 42.  The policies, practices, and customs adopted formally or by practice and custom [by CMS] and applicable to Plaintiff are as follows:
>
> 1. Michigan Department of Corrections Policy Directive 04.06.160 regarding the issuance of special accommodations in its entirety, and specially subparagraph E;
>
> 2. Michigan Department of Corrections Policy Directive 03.04.100 regarding health services in its entirety and specially subparagraph K which requires the network;
>
> 3. Medical Service Advisory Committee Guideline 0021 regarding Reception Center Processing Standing Orders;

-9-

4. Medical Service Advisory Committee Guideline 0006 regarding Air Mattress Guidelines;

5. The custom, practice, or policy to not commence treatment in the Reception and Guidance Center (RGC), and defer for at least 30 days to the facility where the inmate is assigned;

6. The custom, practice, or policy to terminate all pain medication prescribed for the prisoner before incarceration, immediately upon admission into the Reception and Guidance Center;

7. The custom, practice, or policy to not pay special attention to inmates, who, on admission have recently had major surgery, and to not immediately consult the outside surgeon for information and guidance for that inmate's health care.  Provider (CMS) to follow the directives, and subparagraphs R, S, T, U, V and W regarding Reception Intake Services;

8. The custom, practice, or policy, or the absence of a reasonable policy, on how to handle medical matters that are beyond the scope of available institutional services.

The Complaint then attempts to connect these customs, policies and practices to the specific harm suffered by Plaintiff (Dkt. No. 64 ¶¶ 43-44).

Whether or not discovery will serve to prove Plaintiff's allegations against CMS remains to be seen.  However, at this stage of the litigation, a motion to dismiss is not the appropriate vehicle to adjudicate Plaintiff's claims.  *See, e.g., Hagopian v. Smith*, No. 05-74025, 2008 WL 3539251 *5 (E.D. Mich. Jan. 31, 2008) ("Defendant CMS attempts to place the responsibility for...procedures [governing referrals to outside health care] on the MDOC. However, Plaintiff has alleged that Defendant CMS is at least in part responsible.  At this stage of the proceeding the Court must take Plaintiff's allegations as true.  Plaintiff's allegations that Defendant CMS's policies are violating his Eighth Amendment rights are sufficient to survive this motion to dismiss") (citations omitted) adopted by *Hagopian v. Smith*, No. 05-74025, 2008 WL 3539256 *4 (E.D. Mich. Aug. 12, 2008).

-10-

In sum, the undersigned finds that Plaintiff has stated a facially plausible claim of deliberate indifference against CMS in Count Two of his Second Amended Complaint. Therefore, it is recommended that CMS's motion to dismiss be denied with respect to Count Two and that Plaintiff's Eighth Amendment claim against CMS be allowed to proceed through discovery.

The same is not true with respect to Count Three of Plaintiff's Second Amended Complaint, which should be dismissed as it relates to CMS. In Count Three, Plaintiff complains about the specific conduct of Co-Defendant Dr. Thyagarajan and other CMS employees in terminating Plaintiff's pain medication that had been prescribed by an outside physician (Dkt. No. 64, ¶ 54). Count Three also recounts an incident, on September 18, 2008 when Plaintiff saw Dr. Thyagarajan for an office visit. During the appointment, Plaintiff alleges that Dr. Thyagarajan "used cruel and indifferent words," yelled at him, and denied him a MRI and a second mattress (Dkt. No. 64 ¶ 59). These allegations are insufficient to state a claim against CMS, because CMS cannot be held liable under a theory of vicarious liability. *See Street v. Corrections Corporation of America*, 102 F.3d 810, 817-18 (6th Cir. 1996). As such, Plaintiff's attempt to hold CMS liable for the alleged actions or inactions of Dr. Thyagarajan or any other CMS employee should be dismissed.[1]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that CMS's motion to dismiss be **DENIED** with respect to Count Two – but **GRANTED** with respect to Count Three – which impermissibly seeks to hold CMS liable under the doctrine of vicarious liability.

---

[1] To the extent that Count Three mentions a policy and custom of the MDOC adopted by CMS, it is duplicative of Count Two and should still be dismissed.

-11-

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  October 7, 2011

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 7, 2011, by electronic and/or first class U.S. mail.*

s/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5542

-12-