UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL,

      Plaintiff,                         CIVIL ACTION NO. 09-10933

      v.                                   DISTRICT JUDGE DAVID M. LAWSON

RAJA, JAYNA SHARPLEY,             MAGISTRATE JUDGE MARK A. RANDON
CORRECTIONAL MEDICAL
SERVICES, INC., and PRISON
HEALTH SERVICES, INC.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT JAYNA SHARPLEY'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 128)**

### I.    INTRODUCTION

This matter is before the Court on Defendant Jayna Sharpley's Motion for Summary Judgment and Qualified Immunity. (Dkt. No. 128). Plaintiff responded on January 11, 2012. (Dkt. No. 138). Defendant Sharpley filed a Reply on January 18, 2012. (Dkt. No. 142).

For the following reasons, this Magistrate Judge **RECOMMENDS** that Defendant Sharpley's motion be **GRANTED**, and the claims against Defendant Sharpley alleged in Plaintiff's Amended Complaint (Dkt. No. 64) be **DISMISSED WITH PREJUDICE**.

### II.    FACTUAL BACKGROUND

Plaintiff, a former Michigan prisoner, brought this civil rights claim under 42 U.S.C. § 1983 against several prison healthcare officials and two corporate medical service providers. (Dkt. No. 64). Plaintiff was incarcerated by the Michigan Department of Corrections ("MDOC")

at its Reception and Guidance Center in Jackson, Michigan before being transferred to the Parnall Correctional Facility on September 11, 2008 (Dkt. No. 64 at 3). Plaintiff alleges he has a congenital birth defect that results in his spinal cord narrowing and that two surgeries have been performed to relieve nerve compression: one on April 27, 2000, while he was previously incarcerated, and the second, a spinal-fusion surgery, on April 23, 2008, which was performed outside of prison. (Dkt. No. 64 at 4). Plaintiff states that, when he returned to prison on August 14, 2008, he was removed from all medications, which caused intense pain; he repeatedly requested follow-up medical care including pain medication and physical therapy, but his requests were continually denied or ignored. (Dkt. No. 64 at 5).

During the time Plaintiff was incarcerated, his pain condition was severe enough to warrant three emergency trips to Allegiance Hospital where he was given Morphine and Dilaudid for pain. (Dkt. No. 64 at 5). Plaintiff alleges that, after returning to prison, these pain medications were discontinued. Beginning in December 2008 or January 2009, Plaintiff was prescribed Ultram for his pain. (Dkt. No. 64 at 5-6). According to Plaintiff, he has suffered "intense pain, and continues to suffer, from lack of adequate pain medication and the lack of appropriate medical care." (Dkt. No. 64 at 6).

In Count Four of the Amended Complaint, Plaintiff claims he sent Defendant Sharpley, the Health Unit Manager, a kite on September 25, 2008 informing her that he was "suffering with great pain" for over 30 days. (Dkt. No. 64 at 21). According to Plaintiff, he sent Defendant Sharpley another kite on September 30, 2008 indicating that the pain is "like torture." (Dkt. No. 64 at 21). Plaintiff claims Defendant Sharpley failed to do anything to alleviate his pain. (Dkt. No. 64 at 22). In addition, Plaintiff claims it took Defendant Sharply nearly two months to

provide him a ground floor room, a bottom bunk, extra bedding, an air mattress, no work assignment, a cane, tennis shoes, and a handicapped table. (Dkt. No. 64 at 22). Plaintiff says Defendant Sharply's inaction constitutes "cruel and inhuman treatment and deliberate indifference." (Dkt. No. 64 at 22). He seeks $75,000.00 plus punitive damages, costs, interest, and attorney fees. (Dkt. No. 64 at 22).

### III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

### IV. ANALYSIS

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, Plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that [she] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Nor is Plaintiff entitled to the "best" medical treatment available. *McMahon v. Beard*, 583

F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

    **A.    Defendant Sharpley was not Deliberately Indifferent by Failing to Prescribe Pain Medication**

Plaintiff argues Defendant Sharpley was deliberately indifferent to his medical needs by failing to prescribe pain medication he needed. *See* Dkt. No. 138; Ex. A, Plaintiff's Deposition at 150-151:

> Q:    Okay. So as far as your Complaint goes, you're not saying that [Defendant Sharpley] should have prescribed certain medication for you, right?
>
> A:    She could have recommended it.
>
> Q:    Doctors have to recommend it, right?
>
> A:    She's in a position to make that decision as well, because she has.
>
> Q:    And how did you come by that knowledge?
>
> A:    Because she told my wife on the phone.
>
> Q:    That she could prescribe medication?
>
> A:    She can make – she can – she can put a request in for that.

However, as a nurse, Defendant Sharpley did not have the authority to prescribe pain medication for Plaintiff. *See* Dkt. No. 128; Ex. A, Affidavit of Jayna Sharpley:

> 3.    As the [Health Unit Manager], I was responsible for the efficient and effective management of health services within the Health Care Unit. This entails the coordination of all clinical activities, dental, medical, psychological services, mental health and all ancillary and support services. In addition, I provide direct clinical care when appropriate.

. . .

11. As an MDOC nurse, I was not allowed or authorized to prescribe, order, or administer prescription medications unless the medical doctor or physician prescribed them.

12. Registered nurses are required to be licensed under state law. MCL 333.16327 and MCL 333.17211. The "practice of nursing" is also defined by state law and does not include the right or authority to prescribe prescription drugs or controlled substances and it does not include the right to perform surgery.

13. A license is required to distribute, prescribe, or administer a controlled substance in Michigan under MCL 333.7303, and neither I nor any of the nurses I supervised at [Parnall Correctional Facility] had such a license.

14. As a result of the limitations of my license as a registered nurse, I could not have legally prescribed any medications for Plaintiff, performed surgery, ordered or administered any medical tests such as an MRI, or even diagnosed Plaintiff's alleged need for medication. As a nurse, I cannot diagnose such conditions–only a licensed physician may do so. I was not personally involved in any decisions regarding Plaintiff's pain medication or special accommodations.

15. As a registered nurse, I am not authorized to overrule any medical doctor on a medical treatment decision, nor can I order or authorize an MRI. I am not trained as an MRI operator and I could not and am not qualified to rul an MRI or interpret the test results. As a Health Unit Manager, I supervised other nurses, but I could not and did not supervise any health care professional that had a higher license than myself, such as a Medical Doctor, Doctor of Osteopathy, or Physician's Assistant. I had no authority to counter any orders by the Regional Medical Director or any physician.

16. It appeared at all times that the physicians were monitoring Plaintiff's condition and administering proper treatment.

*See also* Dkt. No. 128; Ex. D, MDOC Policy Directive 03.04.100 at ¶ M, "[t]he Health Unit Manager shall be responsible for the operation of the health care clinic, *except for issues which require medical judgment*." (Emphasis added).

Further, the only evidence in the record that Defendant Sharpley specifically knew about the pain Plaintiff was suffering is a grievance that Defendant Sharpley reviewed in October 2008. (Dkt. No. 138; Ex. D, Step One Grievance). Defendant Sharpley was not legally able to prescribe pain medication for Plaintiff, but, "[Plaintiff was] assessed, evaluated, and treated by the Medical Practitioner." (Dkt. No. 128; Ex. B, Grievance Response). None of Defendant Sharpley's Progress Notes indicate that Plaintiff specifically complained to her about his pain. (Dkt. No. 128; Ex. A). In addition, Plaintiff states that he sent kites to Defendant Sharpley complaining of pain, but there is no evidence that Defendant Sharpley received or reviewed these kites; the kites went to the nurse on duty. (Dkt. No. 138; Ex. B, Kites Dated September 2008).

Viewing the evidence in the light most favorable to Plaintiff, this Magistrate Judge finds Defendant Sharpley was not deliberately indifferent by failing to prescribe pain medication for Plaintiff; she was legally prohibited from prescribing such medication, and Defendant Sharpley did not subjectively perceive facts from which to infer substantial risk to Plaintiff. The only evidence that Defendant Sharpley knew about the pain was the grievance filed in October 2008; Plaintiff was treated by a medical practitioner for his pain.

**B.      Defendant Sharpley was not Deliberately Indifferent to Plaintiff's Need for Special Accommodations**

In October 2008, Plaintiff filed a grievance requesting two mattresses. (Dkt. No. 138; Ex. D, Step I Grievance). While Defendant Sharpley reviewed the grievance on October 10, 2008, Plaintiff says she failed to stop the "serious and relentless infliction of cruel pain" until two months later, on December 2, 2008. (Pl. Br. at 5). In addition, Plaintiff argues that Defendant

Sharpley did not timely provide him with a ground floor room, a bottom bunk, extra bedding, no work assignment, a cane, tennis shoes, and a handicapped table.

    **1.**    **Ground Floor Room, Bottom Bunk, No Work Assignment, and Cane**

Plaintiff had a ground floor room, bottom bunk, no work assignment, and a cane as soon as he arrived at Parnall Correctional Facility on September 11, 2008. Defendant Sharpley then wrote an order so Plaintiff could keep these special accommodations. *See* Dkt. No. 138; Ex. A, Plaintiff's Deposition at 156-158:

    Q:    So the ground floor room you came in at?

    A:    Yes.

    Q:    And [Defendant Sharpley] wrote the order in December to keep you there?

    A:    Uh-huh.

    Q:    So sounds like you're right, she did do that for you?

    A:    Uh-huh.

    Q:    You did get that?

    A:    Uh-huh.

                .   .   .

    Q:    Did you have a work assignment?

    A:    No.

    Q:    But [Defendant Sharpley] put the order in that you wouldn't get one?

    A:    Uh-huh.

    Q:    In December?

    A:    Uh-huh.

Q: Okay. So you did get that?

A: Uh-huh.

Q: Did you get the cane?

A: Came in with a cane.

Q: You came in?

A: Uh-huh.

Q: So–

A: She just had to – she just put in the paperwork saying he is allowed to have this.

Q: Okay. So you did get that.

A: Uh-huh.

*See also* Dkt. No. 128; Ex. H, Special Accommodations Orders at 1 (Nurse Greg C. Sottek ordered a bottom bunk for Plaintiff on August 14, 2008, and Defendant Sharpley continued the order on December 2, 2008).

Accordingly, as it relates to the ground floor room, bottom bunk, no work assignment, and cane, this Magistrate Judge finds Defendant Sharpley was not deliberately indifferent to Plaintiff's serious medical needs. Defendant Sharpley did not disregard a substantial risk to Plaintiff; to the contrary, she took action to ensure Plaintiff continued to receive these special accommodations.

    **2.**    **Air Mattress/Extra Bedding**

This Magistrate Judge initially notes that Plaintiff's complaint that he did not timely receive extra bedding is the same as his complaint that he did not timely receive an air mattress. *See* Dkt. No. 138; Ex. A, Plaintiff's Deposition at 157:

> Q: When you say extra bedding, you mean a mattress?
>
> A: Air mattress, that's what they mean.
>
> Q: The air mattress you said you didn't get?
>
> A: Uh-huh.

Plaintiff's air mattress was ordered before December 2, 2008. *See* Dkt. No. 128; Ex. H, Special Accommodations Orders at 1 (Sheri J. Eckelbarger ordered an air mattress for Plaintiff on October 21, 2008). In addition, contrary to Plaintiff's argument, he received the air mattress before December 2, 2008. *See* Dkt. No. 128; Ex. A, Progress Note dated 11/17/2208 attached to Affidavit of Jayna Sharpley ("I asked [Plaintiff] if his air mattress was working").

While the air mattress Plaintiff received was not filled with air, Defendant Sharpley acted to resolve the issue; she did not simply disregard his request. *See* Dkt. No. 128; Ex. A, Affidavit of Jayna Sharpley at 5-6:

> 21. [o]n November 17, 2008, I completed a progress note for Plaintiff regarding his air mattress. I asked Plaintiff if his air mattress was working and he advised it was not filled up with air. I called to his housing unit and an Officer Meeker stated that he would ensure Plaintiff's air mattress was filled. I informed Plaintiff to notify Health Services if this did not occur. Plaintiff verbalized his understanding and agreed to do so.
>
> 22. On December 1, 2008, I completed a progress note for Plaintiff regarding Plaintiff's air mattress. Plaintiff knocked on my window at my office and stated, "I need a new air mattress; mine has a hole in it." I asked Plaintiff, "Your housing officer advised me he had given you a foam mattress that was available and had been stored by custody. He told me you wanted that mattress because it worked better than the air mattress. Is that correct?"

> Plaintiff stated, "I am using that. Which one is better? Which one should I keep?" I told Plaintiff that the medical provider advised that Plaintiff could use whichever mattress he wanted. Plaintiff then stated that he "guessed I want an air mattress then." I advised Plaintiff that I would contact custody and an air mattress would be provided. Plaintiff agreed. I asked Plaintiff if he had written a kite requesting an air mattress and he stated, "Yes, three and I got no answer." I reviewed his chart and it did not indicate that he had filed three kites. I asked Plaintiff why he did not write a helpline kite when he received no answer, and he stated, he "didn't know." I reviewed with Plaintiff the importance of utilizing the kite and/or helpline system which he agreed to use.
>
> 23. On December 2, 2008, I entered a progress note for Plaintiff regarding Plaintiff's air mattress[.] An air mattress was delivered to Plaintiff that day and the housing unit officer was notified. The housing unit officer advised that he would take the foam mattress back from Plaintiff. The housing unit officer further advised that he would call maintenance to inflate the air mattress.

Plaintiff argues that "[c]ertainly Defendant Sharpley could have done a lot better than she did to take care of [Plaintiff]. There is no question that the air mattress was Sharpley's responsibility." (Pl. Br. at 7). However, Plaintiff does not present any evidence to support this conclusory position, and Defendant Sharpley acted appropriately in securing an air mattress for him.

Viewing the evidence in the light most favorable to Plaintiff, this Magistrate Judge finds Defendant Sharpley was not deliberately indifferent to Plaintiff's need for an air mattress.

### 3. Tennis Shoes

Plaintiff testified that Defendant Sharpley was deliberately indifferent to his serious medical needs because he did not receive his tennis shoes until summertime. (Dkt. No. 138; Ex. A, Plaintiff's Deposition at 158). This Magistrate Judge disagrees.

Plaintiff's tennis shoes were ordered on October 21, 2008. (Dkt. No. 128; Ex. E, MDOC SOAP Note Summary). They were delivered to Plaintiff six weeks later on December 2, 2008.

When Plaintiff received his tennis shoes, he did not have any complaints. (Dkt. No. 128; Ex. F, MDOC Progress Note).

Plaintiff admits it takes approximately four to six weeks to receive tennis shows. (Dkt. No. 138; Ex. A, Plaintiff's Deposition at 161).

Viewing the evidence in the light most favorable to Plaintiff, this Magistrate Judge finds Defendant Sharpley was not deliberately indifferent to Plaintiff's need for tennis shoes.

### 4. Handicapped Table

Plaintiff admits that he was not immediately approved for a handicapped table. *See* Dkt. No. 138; Ex. A, Plaintiff's Deposition at 158-159:

> Q: What about the handicapped table, what is that?
>
> A: That's a table that you sit at, because by you having the cane, you can't carry a tray in, so you sit down and the food service workers bring it to your table.
>
> Q: So you know [Defendant Sharpley] ordered it on December 2nd, and you're saying you didn't get that either?
>
> A: Huh-uh.
>
> Q: Did you ever get it?
>
> A: It took a while before they approve for me to have that.

According to Defendant Sharpley, Plaintiff was not approved for the handicapped table until December 2, 2008. *See* Dkt. No. 128; Ex. H, Special Accommodations Orders at 2 (the start date for the handicapped table was 12/02/2008). Plaintiff does not dispute this fact.

Viewing the evidence in the light most favorable to Plaintiff, this Magistrate Judge finds Defendant Sharpley was not deliberately indifferent to Plaintiff's need for a handicapped table;

she ordered it on the date Plaintiff was approved. *See* Dkt. No. 128; Ex. I, Special Accommodation Notice (Defendant Sharpley ordered the handicap table on 12/02/2008).

## V. RECOMMENDATION

For the reasons set forth above, this Magistrate Judge **RECOMMENDS** that Defendant Sharpley's motion be **GRANTED**, and the claims against Defendant Sharpley alleged in Plaintiff's Amended Complaint (Dkt. No. 64) be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                  s/Mark A. Randon  
                                                  Mark A. Randon  
                                                  United States Magistrate Judge

Dated: July 18, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 18, 2012, by electronic and/or ordinary mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*