UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY HALL,

              Plaintiff,                    CIVIL ACTION NO. 09-10933

           v.                       DISTRICT JUDGE DAVID M. LAWSON

RAJA, JAYNA SHARPLEY,         MAGISTRATE JUDGE MARK A. RANDON
CORRECTIONAL MEDICAL
SERVICES, INC., and PRISON
HEALTH SERVICES, INC.,

              Defendants.
_____/

**REPORT AND RECOMMENDATION
TO GRANT PRISON HEALTH SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 125)**

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a former Michigan prisoner, brought this civil rights claim under 42 U.S.C. §

1983 against several prison healthcare officials and two corporate medical service providers –

Movant Prison Health Services ("PHS") and Correctional Medical Services.  (Dkt. No. 64).

Plaintiff alleges he has a congenital birth defect that results in his spinal cord narrowing and that

two surgeries have been performed to relieve nerve compression:  one on April 27, 2000, and the

second, a spinal-fusion surgery, on April 23, 2008, which was performed by Dr. Timothy

Spencer outside of prison.  (Dkt. No. 64 at 4).  Plaintiff states that, when he returned to prison on

August 14, 2008, he was removed from all medications, which caused intense pain; he repeatedly

-1-

requested follow-up medical care including pain medication and physical therapy, but his requests were repeatedly denied or ignored.  (Dkt. No. 64 at 5).

During the time Plaintiff was incarcerated, his pain condition was severe enough to warrant three emergency trips to Allegiance Hospital where he was given Morphine and Dilaudid for pain.  (Dkt. No. 64 at 5).  Plaintiff alleges that, after returning to prison, these pain medications were discontinued.  Beginning in December 2008 or January 2009, Plaintiff was prescribed Ultram for his pain.  (Dkt. No. 64 at 5-6).  According to Plaintiff, he has suffered "intense pain, and continues to suffer, from lack of adequate pain medication and the lack of appropriate medical care."  (Dkt. No. 64 at 6).

In Count One of Plaintiff's Complaint, he requests injunctive relief – that PHS be required to provide him an air mattress, pain medications, and that he be allowed to schedule an appointment with Dr. Spencer to evaluate his present condition.  (Dkt. No. 64 at 11-12).  Count One was dismissed; Plaintiff conceded that there was no viable request for injunctive relief since he is no longer incarcerated.  (Dkt. Nos. 103 and 105).

Count Five of Plaintiff's Complaint alleges PHS had the duty to meet Plaintiff's medical needs at all times beginning after April 1, 2009, and that the policies adopted by PHS run counter to this principle.  (Dkt. No. 64 at 23-24).  Plaintiff cites MDOC Policy Directive 04.06.135 regarding when a prisoner is entitled to receive outside care.  (Dkt. No. 64 at 23).  Plaintiff also cites MDOC Policy Directive 03.04.100(K) which requires PHS to comply with MDOC policy. (Dkt. No. 64 at 23).  Plaintiff claims that it is PHS's custom, practice, or policy to ignore recommendations for outside care made by qualified healthcare service personnel, and also to not pay special attention to inmates who have recently had major surgery.  (Dkt. No. 64 at 23).

-2-

Before the Court is PHS's Motion for Summary Judgment.  (Dkt. No. 125).  PHS asks the Court to dismiss count five.  Plaintiff responded on January 5, 2012.  (Dkt. No. 136).  PHS filed a Reply on January 9, 2012.  (Dkt. No. 137).

For the following reasons, this Magistrate Judge **RECOMMENDS** that PHS's motion be **GRANTED**, and that Count Five – the only remaining count against PHS – be **DISMISSED WITH PREJUDICE**.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere

-3-

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff").

III.    ANALYSIS

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against

prison officials for "deliberate indifference" to his serious medical needs, since the same

constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *See Estelle v.*

*Gamble*, 429 U.S. 97 (1976). Under *Monell*, in order to establish a § 1983 claim against a

corporation, Plaintiff must allege that he suffered deliberate indifference due to a policy, practice,

or custom of PHS. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690

(1978); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (extending the holding in

*Monell* to private corporations). A claim relying on the doctrine of respondeat superior will not

lie. *See Monell*, 436 US at 691. In order to satisfy the requirements set forth in *Monell*, Plaintiff

must "identify the policy, connect the policy to the [corporation] itself and show that the

particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*,

820 F.2d 170, 176 (6th Cir. 1987).

Plaintiff's Complaint alleges he suffered deliberate indifference due to three of PHS's

policies, practices, or customs. Plaintiff claims PHS has a custom, practice, or policy to: (1) not

follow MDOC Policy Directive 04.06.135(G), which allows a prisoner who has been referred to

an outside provider by institutional health care staff as a necessary part of the diagnostic or

treatment program to see that outside provider at no expense to the prisoner (Dkt. No. 125; Ex.

D); (2) ignore recommendations for outside care made by qualified healthcare service personnel;

and (3) not pay special attention, upon admission, to inmates who have recently had major

-4-

surgery.  (Dkt. No. 64 at 23).  According to Plaintiff, Dr. Bhamini Sudhir – a PHS medical service provider – indicated that Plaintiff needed to make an appointment with Dr. Spencer in November 2009 because his medical needs were beyond the scope of available institutional services, and PHS's decision to ignore this medical determination was "unreasonable, cruel and inhuman[], and therefore unconstitutional."  (Dkt. No. 64 at 23-24).

This Magistrate Judge previously issued a Report and Recommendation ("R&R") denying PHS's Motion to Dismiss count five, but indicated that Plaintiff would have to use the discovery process to prove his allegations against PHS.  (Dkt. No. 103 at 7).  The R&R was adopted by Judge David M. Lawson on September 7, 2011.  (Dkt. No. 105).

### A.     Plaintiff's Claim that PHS has a Custom, Practice, or Policy Not to Follow MDOC Policy Directive 04.06.135(G)

Plaintiff saw Dr. Rawal, an outside neurologist, on April 3, 2009.  (Dkt. No. 126; Ex. F, Page from Plaintiff's MDOC Medical Records Regarding April 3, 2009 Appointment with Dr. Rawal). Plaintiff did not have to pay for this visit.  This contradicts Plaintiff's argument that PHS has a custom, practice, or policy to not follow MDOC Policy Directive 04.06.135(G), which allows a prisoner who has been referred to an outside provider by institutional health care staff as a necessary part of the diagnostic or treatment program to see that outside provider at no expense to the prisoner.

Dr. Rawal concluded that Plaintiff "needs pain management – nothing to offer neurologically."  (Dkt. No. 126; Ex. F).  Plaintiff acknowledges receiving Ultram for his pain but says he needed stronger medication.  (Dkt. No. 64 at 9).  Ultimately, the Pain Management Committee – an administrative unit of the MDOC – not PHS – is responsible for making

-5-

recommendations for pain medication.[1]  Moreover, where, as here, a prisoner "has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Plaintiff has presented no evidence that PHS has a custom, practice, or policy not to follow MDOC Policy Directive 04.06.135(G), and this claim must be dismissed.

**B.     Plaintiff's Claim that PHS has a Custom, Practice, or Policy to Ignore Recommendations for Outside Care Made by Qualified Healthcare Service Personnel**

To support his claim that PHS has a custom, practice, or policy to ignore recommendations for outside care made by qualified healthcare service personnel, Plaintiff presented medical records from Dr. Sudhir.  Plaintiff claims Dr. Sudhir (of PHS) indicated he needed to see Dr. Spencer – the outside surgeon who performed Plaintiff's spinal-fusion surgery. However, none of the medical records mention this discussion or Dr. Spencer.

On April 17, 2009, Dr. Sudhir said, "[p]atient was seen by the neurosurgeon Dr. Rawal earlier this month, he has no further recommendation which has been d/w the patient.  Patient was recommended to have urodynamic studies by urology, the request is pending."  (Dkt. No. 126; Ex. C).

On April 25, 2009, Dr. Sudhir said, "[p]atient is made aware that there is nothing more for me [to] offer except cause PHS to expedite the PMC recommendation and for urology consult.  Patient understands and [is] agreeable[.]" (Dkt. No. 126; Ex. C).

---

[1] Since "[n]either a state corrections department nor its administrative units are 'persons' within the meaning of section 1983[,] . . . [the] Pain Management Committee [is] not subject to a section 1983 action."  *Greenman v. Oulette*, 2010 WL 2901873 at *2 (W.D. Mich. July 23, 2010).

On May 8, 2009, Dr. Sudhir said:

I have told Mr. Hall about neurosurgery consult, Dr. Rawal had no further treatment plan. I have told him that I can't override PMC recommendation and even if I wanted to, the system won't allow me to. Patient was sobbing in the office. I called PHS 407 coordinator, got very rude answer that they have a lot on their table and that they don't handle PMC and it has to be through the RMO and they don't have time to tell me who the RMO is to this facility or to find out the number. It was an uncalled rudeness. I got the number through the HUM and called the RMO to discuss the case, RMO suggested Vit D and mobic for now and to re-evaluate. I have expressed the same to patient and he is willing to try anything at this point.

(Dkt. No. 126; Ex. C).

On November 20, 2009, Dr. Sudhir said:

Patient has been seen by neurosurgeon in early part of this year and he has had MRI, CT myelogram, per Dr. Rawal the neurosurgeon's note, there is no neurosurgical intervention at this time. This has been explained to the patient but patient states that he wants his pain meds to be adjusted. It seemed with some definite purpose, patient repeatedly tapped on his diaper and said "I have 2 diapers left, it is not fun to wear diapers". In the past when patient has told me that he is wearing diapers and on exam it was noted that he was not and that he was dry, pls refer to my note in June 09. Every time I have seen him, he seems to have very inappropriate mannerism with me, he seems to have a smirk on his face, flirting with his eyes. I have witnessed patient making "flirty" remarks to the staff. At this point, I have made patient aware again that pain meds change is beyond my control as he has the recommendation per PMC, will schedule patient with Dr. Gelbert to resubmit PMC papers and to discuss his interest to see outside physician. Patient tells me not to schedule him with Dr. Gelbert with whom he has had very brief interaction but instead he wants to see "Beth Miller" who is the new NP.

(Dkt. No. 126; Ex. G, Page from Plaintiff's MDOC Medical Records Regarding November 20, 2009 Appointment with Dr. Sudhir).

Discovery is now complete, and Plaintiff failed to present any evidence to support his claim that Dr. Sudhir indicated that Plaintiff needed to see Dr. Spencer in November 2009.

Indeed, Plaintiff has not presented any evidence that even mentions Dr. Spencer at any time after April 1, 2009 (the date PHS began providing medical services for the MDOC).

      **C.**      **Plaintiff's Claim that PHS has a Custom, Practice, or Policy not to Pay Special Attention, Upon Admission, to Inmates who have Recently had Major Surgery**

Plaintiff started his prison sentence with the MDOC on August 14, 2008.  PHS did not begin providing medical services to the MDOC until April 1, 2009.  Accordingly, PHS had no role in Plaintiff's "admission," and could not have paid him special attention.

## IV.   CONCLUSION

For the reasons stated above, this Magistrate Judge **RECOMMENDS** that PHS's motion be **GRANTED**, and that Count Five – the only remaining count against PHS – be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

-8-

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 31, 2012

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 31, 2012, by electronic and/or first class U.S. mail.*

s/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-55420